Eahithap ag                    PLEA

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4            v.                           13 Cr. 616 VB

5    JOHANNES THALER,

6               Defendant.

7    ------------------------------x

8                                        October 17, 2014
                                         10:45 a.m.
9                                        White Plains, N.Y.

10   Before:

11                   HON. VINCENT L. BRICCETTI,

12                                        District Judge

13                        APPEARANCES

14   PREET BHARARA
         United States Attorney for the
15       Southern District of New York
     EMILY RAE WOODS
16   TODD BLANCHE
         Assistant United States Attorney
17
     FEDERAL DEFENDERS UNIT
18       Attorney for Defendant
     JASON SER
19

20   KERWIN JOHN, DOJ

21

22
                            PLEA
23

24

25

Eahithap ag                        PLEA

1          THE COURTROOM DEPUTY:  United States v. Thaler.  Will

2    counsel please note their appearances.

3          MS WOODS:  Rae Woods from the government.  With me is

4    Todd Blanche and Special Agent Kerwin John.

5          MR. SER:  Jason Ser for Mr. Thaler.

6          THE COURT:  Good morning, everybody, have a seat.

7          Mr. Ser, does your client have an application?

8          MR. SER:  The defendant, Mr. Thaler, requests that the

9    Court take a guilty plea from him on Counts 2 and 4 of the

10   indictment in case, 13 Cr. 616.

11         THE COURT:  That would be in fall satisfaction of the

12   indictment?

13         MR. SER:  Correct, your Honor.

14         THE COURT:  Okay.  Mr. Thaler, I've been advised that

15   you wish to plead guilty to Counts 2 and 4 of indictment

16   13 Cr. 616.  Is that correct?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Before I accept your guilty plea I'm going

19   to ask you a number of questions and it's important that you

20   answer these questions honestly and completely.  The purpose of

21   my questions is to make sure you understand your rights and

22   that you're pleading guilty of your own free will.  I also want

23   to make sure that you're pleading guilty because you are guilty

24   and not for some other reason and that you understand the

25   consequences of your plea.  Therefore, it's very important that

Eahithap ag                    PLEA

1    you understand every question before you answer it.  If there's

2    any question that you do not understand, don't answer it, just

3    tell me that you don't understand it, I'll either try to

4    rephrase it or I'll give you whatever opportunity you need to

5    speak to your attorney about that.  Will you do that?

6              THE DEFENDANT:  Yes, sir.

7              (Defendant placed under oath)

8    BY THE COURT:

9    Q.  Mr. Thaler, you're now under oath.  What that means is if

10   you answer any of my questions falsely your answers could later

11   be used against you in a prosecution for perjury or for making

12   a false statement.  Do you understand that?

13   A.  Yes, your Honor.

14   Q.  What is your full name?

15   A.  Johannes Walter Thaler.

16   Q.  How old are you?

17   A.  51.

18   Q.  How far did you go in school?

19   A.  Three years of college.

20   Q.  Where was that?

21   A.  Some Roanoke, Virginia and some in Westchester Community

22   College.

23   Q.  Are you now or have you recently been under the care of a

24   doctor or psychiatrist?

25   A.  No.

Eahithap ag                    PLEA

1    Q.  Have you ever been treated or hospitalized for any mental

2    illness?

3    A.  Yes.

4    Q.  Can you just tell me what that treatment or hospitalization

5    was for and what was the outcome?

6    A.  I had a bout of depression seven years ago I think it was.

7    Q.  Approximately when was that?

8    A.  I think 2007.

9    Q.  Approximately seven years ago?

10   A.  Seven years ago.

11   Q.  Were you hospitalized for that?

12   A.  Yes, for three days.

13   Q.  Have you received follow-up treatment for that?  It's a

14   very --

15   A.  I have not.

16   Q.  You're not currently in treatment for that?

17   A.  No, not currently.

18   Q.  Just wait for me to finish my question before you answer.

19   I know you're trying to be helpful.  For the Court reporter's

20   benefit let me finish and then you can answer the question.

21         Have you ever been treated or hospitalized for any

22   addiction to drugs or alcohol?

23   A.  No, sir.

24   Q.  In the last 24 hours have you taken any drugs or any

25   medicine or pills or consumed any alcohol?

Eahithap ag                    PLEA

1    A.  No, sir.

2    Q.  No medicine, no pills, no drugs, no alcohol?

3    A.  No.

4    Q.  Is your mind clear today?

5    A.  Yes, sir.

6    Q.  Do you understand what's happening here today?

7    A.  Yes, sir.

8    Q.  Have you had enough time and opportunity to discuss your

9    case with your attorney?

10   A.  Yes, I have.

11   Q.  Did you discuss with him the charges against you including

12   any possible defenses you might have?

13   A.  Yes, sir.

14   Q.  Did you discuss with him the consequences of entering a

15   plea of guilty?

16   A.  Yes, sir.

17   Q.  Are you satisfied with your attorney's representation of

18   you?

19   A.  Yes, I am, your Honor.

20          THE COURT:  Does either counsel have any doubt as to

21   the defendant's competence to plead guilty at this time?

22   Ms Woods?

23          MS WOODS:  No, your Honor.

24          THE COURT:  Mr. Ser?

25          MR. SER:  No, your Honor.

Eahithap ag                    PLEA

1              THE COURT:  Based on the defendant's responses to my

2      questions and my observations of his demeanor I find that he is

3      fully competent to enter an informed guilty plea at this time.

4      Q.  Mr. Thaler, I'm now going to explain certain constitutional

5      rights that you have, and these are rights that you will be

6      giving up if you enter a guilty plea.  So once again, please

7      stop me if there's anything you do not understand and either I

8      or your attorney will explain the matter more fully.

9              First, under the Constitution and laws of the United

10     States, you have a right to plead not guilty to the charges

11     contained in the indictment.  Do you understand that?

12     A.  Yes.

13     Q.  If you did plead not guilty or persist in your previously

14     entered not guilty plea you would be entitled a speedy and

15     public trial by a jury on the charges contained in the

16     indictment.  Do you understand that?

17     A.  Yes.

18     Q.  At that trial you would be presumed to be innocent and the

19     government would be required to prove you guilty by competent

20     evidence beyond a reasonable doubt before you could be found

21     guilty.  You would not have to prove that you were innocent.

22     Do you understand that?

23     A.  Yes, I do.

24     Q.  If there were a jury trial you could not be convicted

25     unless a jury of twelve people unanimously agreed that you were

Eahithap ag                    PLEA

1    guilty beyond a reasonable doubt.  Do you understand that?

2    A.  Yes, I do.

3    Q.  At that trial and at every other stage of the case you

4    would have the right to be represented by an attorney.  If you

5    could not afford an attorney, the Court would appoint one to

6    represent you at no cost to you.  Do you understand that?

7    A.  Yes.

8    Q.  I understand that Mr. Ser has been appointed to represent

9    you in this case, is that correct?

10   A.  Yes.

11   Q.  During a trial, the witnesses for the government would have

12   to come to court and testify in your presence where you could

13   see them and hear them.  Your lawyer could cross-examine those

14   witnesses and object to evidence offered by the government.

15   Also, your lawyer could offer evidence on your behalf and you

16   would be able to use subpoenas to compel witnesses to come to

17   court and testify in your defense even if they did not want to

18   come.  Do you understand all of that?

19   A.  Yes, sir.

20   Q.  At a trial you would have the right to testify if you chose

21   to do so.  You would also have the right not to testify.  If

22   you chose not to testify, that could not be used against you in

23   any way.  No inference or suggestion of guilty could be drawn

24   from the fact that you did not testify.  Do you understand

25   that?

Eahithap ag                    PLEA

1    A.  Yes, sir.

2    Q.  If you were convicted at a trial you would have the right

3    to appeal that verdict to a higher court.  Do you understand

4    that?

5    A.  Yes, your Honor.

6    Q.  Even now you have the right to change your mind; in other

7    words, you don't have to plead guilty.  You can persist in your

8    plea of not guilty and go to trial.  Do you understand that?

9    A.  Yes, sir.

10   Q.  But, if you do plead guilty and I accept your plea you will

11   be giving up your right to a trial and all of the other trial

12   rights that go with it that I've just described.  If you plead

13   guilty there will be no trial and I will enter a judgment of

14   guilty and sentence you on the basis of your guilty plea after

15   considering a presentence report prepared by the Probation

16   Department and after considering submissions I get from you,

17   your attorney and the government.  Do you understand that?

18   A.  Yes, your Honor.

19   Q.  Finally, if you plead guilty you will also be giving up

20   your right not to incriminate yourself and I'll ask you

21   questions about what you did in order to satisfy myself that

22   you are in fact guilty as charged.  Do you understand that?

23   A.  Yes, I do.

24   Q.  Have you received a copy of the indictment in this case?

25   A.  Yes, I have, your Honor.

Eahithap ag                    PLEA

1    Q.  Have you read it?

2    A.  Yes, I have.

3    Q.  Have you discussed it with your attorney?

4    A.  Yes.

5    Q.  Do you understand that in Counts 2 and 4 you are charged as

6    follows, and I'm just going to quickly summarize it, I'm not

7    going to reread the indictment since you've already read it.

8    In Count 2, in summary, you're charged with aiding and abetting

9    the bribery of a public official; specifically, that you aided

10   and abetted your co-defendant, Robert Lustyik, who was at the

11   time a special agents with the Federal Bureau of Investigation,

12   in soliciting cash payments in return for disclosing

13   confidential governmental information to which Mr. Lustyik had

14   access by virtue of his position as a special agent with the

15   FBI.  Do you understand that that's the gist of what you're

16   charged with in Count 2?

17   A.  Yes, sir.

18   Q.  In Count 4 you're charged with conspiracy to defraud the

19   citizens of the United States and the Federal Bureau of

20   Investigation, often referred to as honest services fraud.  In

21   this case the allegation is that you conspired with Mr. Lustyik

22   and Rizve Ahmed, your co-defendants, to committing offenses

23   against the United States, specifically wire fraud.  And we'll

24   talk about that a little bit more later.  Do you understand in

25   Count 4 you're charged with a conspiracy to commit wire fraud

Eahithap ag                    PLEA

1   and honest services fraud in violation of Section 1349 of Title

2   18?

3   A.  Yes, sir.

4          THE COURT:  Ms Woods, could you spell out for me the

5   essential elements of the offense charged in Count 2, which is

6   the aiding and abetting bribery of a public official charge.

7          MS WOODS:  The essential elements include:  First,

8   that the offense involved a public official; second, that the

9   public official solicited, accepted and agreed to accept a

10  thing of value; third, that the public official did so

11  corruptly with the intent to be influenced in the performance

12  of an official act; and finally, that the defendant aided and

13  abetted that offense.

14         THE COURT:  Could you now spell out for me the

15  elements of Count 4.

16         MS WOODS:  The elements for Count 4 include the

17  following:  First, that the defendant agreed with at least two

18  other people; second, that the defendant willfully joined in

19  that agreement, third, that one of the conspirators committed

20  an overt act during the time period of the conspiracy in an

21  effort to further the conspiracy; and fourth, that the

22  agreement involved an agreement to commit an offense against

23  the United States, specifically honest services wire fraud.

24         THE COURT:  Thank you.

25  Q.  Mr. Thaler, do you understand that if you did not plead

Eahithap ag                    PLEA

1   guilty to Count 2 and Count 4 the government would have to

2   prove each and every element of those charges beyond a

3   reasonable doubt at trial?

4   A.  Yes, your Honor.

5   Q.  Do you understand that the maximum possible penalties for

6   these offenses are as follows?  First, I'll talk about Count 2.

7   The maximum term of imprisonment is 15 years; there is a

8   possible maximum term of supervised release of three years; a

9   maximum fine of the greatest of $250,000 or twice the gross

10  pecuniary gain derived from the offense or twice the gross

11  pecuniary loss to persons other than you resulting from the

12  offense; and there's also a one hundred dollar mandatory

13  special assessment.  Those are all the possible maximum

14  penalties on Count 2 and in the case of the mandatory special

15  assessment that's a mandatory penalty.

16        Now, on Count 4, the maximum possible penalties are as

17  follows:  The maximum term of imprisonment is 20 years; a

18  maximum term of supervised release of three years; a maximum

19  fine of the greatest of $250,000 or twice the gross pecuniary

20  gain derived from the offense or twice the gross pecuniary loss

21  to persons other than you resulting from the offense; and

22  there's also a one hundred dollar mandatory special assessment.

23        Do you understand that those are the maximum possible

24  penalties for those two offenses?

25  A.  Yes, your Honor.

Eahithap ag                    PLEA

1    Q.  Let me just tell you something about supervised release

2    which I mentioned.  Supervised release means that if I sentence

3    you to prison, you will be subject to monitoring after you are

4    released from prison and there are certain rules and conditions

5    of supervised release that you have to follow.  If you violated

6    those rules, you could be returned to prison without a jury

7    trial to serve additional time even beyond your original

8    sentence, and if that were to happen, you would be given no

9    credit for time served in prison on your original sentence and

10   no credit for any time spent on supervised release.  Do you

11   understand that?

12   A.  Yes, sir.

13   Q.  Do you also understand that parole has been abolished in

14   the federal system and that if you are sentenced to prison you

15   will not be released early on parole?  Do you understand that?

16   A.  Yes, sir.

17   Q.  Are you a United States citizen?

18   A.  Yes, sir.

19   Q.  As part of your sentence, I can also order restitution to

20   any person injured as a direct result of your criminal conduct,

21   do you understand that?

22   A.  Yes, sir.

23           THE COURT:  Ms Woods, is there any basis for

24   restitution in this case?

25           MS WOODS:  No, your Honor.

Eahithap ag                    PLEA

1          THE COURT:  As far as you know.

2          MS WOODS:  No.

3   Q.  It's important you know that in theory I could impose an

4   order of restitution but only if there is evidence that someone

5   was harmed directly as a result of your criminal conduct and

6   suffered some sort of loss.  The government is telling me that

7   she's not aware of any basis for a restitution order in this

8   case.  You do understand that in theory I could impose

9   restitution, do you understand that?

10  A.  Yes.

11  Q.  There are no mandatory minimums for either of these

12  offenses except for the one hundred dollar special assessment.

13  So if I accept your guilty plea and adjudicate you guilty I

14  have to impose the one hundred dollar special assessment on

15  both offenses, but other than that there are no mandatory

16  minimums.  Do you understand that?

17  A.  Yes, your Honor.

18  Q.  Do you also understand that because you're pleading guilty

19  to two different counts in the indictment, I will be imposing a

20  separate sentence on each of those two counts?  Do you

21  understand that?

22  A.  Yes.

23  Q.  In other words, if I accept your plea on both Counts 2 and

24  4, ultimately I'm going to impose a sentence on Count 2 and a

25  separate sentence on Count 4, do you understand that?

Eahithap ag                    PLEA

1    A.  Yes, sir.

2    Q.  Do you further understand that I may, although I'm not

3    required to, but I may order you to serve the sentences on

4    those two counts either concurrently, meaning at the same time,

5    or consecutively, meaning that you would serve the sentences

6    one after the other.  Do you understand that I may do that?

7    A.  Yes, sir.

8    Q.  So do you further understand that if I impose consecutive

9    sentences your total sentence could be a maximum total of 35

10   years imprisonment?

11   A.  Yes.

12   Q.  Because on Count 2, the maximum sentence is 15 years, and

13   on Count 4, it's 20.  So if you add them together it's 35

14   years, do you understand that?

15   A.  Yes.

16   Q.  Do you further understand that if I accept your guilty plea

17   and adjudge you guilty that adjudication may deprive you of

18   valuable civil rights such as the right to vote, the right to

19   hold public office, the right to serve on a jury, the right to

20   possess any kind of firearm, and the right to hold certain

21   professional licenses?

22   A.  Yes, sir.

23   Q.  Now, have you talked to your attorney about how the Federal

24   Sentencing Guidelines apply to your case?

25   A.  Yes, I have, your Honor.

Eahithap ag                    PLEA

1    Q.  In imposing sentence I'm required to consider the

2    Sentencing Guidelines which are a set of rules and

3    recommendations for determining an appropriate sentence.  I

4    have to calculate the applicable sentencing guideline range,

5    consider that range, and I also have to determine whether there

6    should be any upward or downward departure from the range.

7    Now, while I must pay attention to the guidelines in

8    determining your sentence, in the end I'm required to impose a

9    sentence that I believe best satisfies the purposes of the

10   criminal law based on the sentencing factors set forth in

11   Section 3553(a) of Title 18 of the United States Code, even if

12   that sentence is higher or lower than what the guidelines

13   recommend.  Do you understand that?

14   A.  Yes, sir.

15   Q.  I won't be able to determine how the guidelines apply to

16   your case until after a presentence report has been prepared by

17   the Probation Office and you and the government have had a

18   chance to comment on or challenge anything in the report.  Do

19   you understand that?

20   A.  Yes, sir.

21   Q.  Do you understand that if your attorney or anyone else has

22   attempted to predict what your sentence will be that prediction

23   could be wrong?

24   A.  Yes, sir.

25   Q.  I'm telling you this because you need to understand that no

Eahithap ag                    PLEA

1    one can be sure now what your sentence will be.  It's my job to

2    decide what your sentence will be and I'm not going to do that

3    now.  I'm going to wait until after the presentence report is

4    completed and I've ruled on any challenges to the report,

5    calculated the sentencing range, determined whether there are

6    grounds to depart from the range and considered the factors set

7    forth in Section 3553(a).  So what all of that means is that

8    nobody, not even I, can predict what the sentence will be in

9    your case.  Do you understand that?

10   A.  Yes, your Honor.

11   Q.  Do you also understand that even if you're sentence is

12   different from what your attorney or anyone else told you it

13   might be, or if it's different in what you expected it to be,

14   or what may be contained in the plea agreement, once you've

15   pleaded guilty you will not be allowed to withdraw your plea?

16   Do you understand all that?

17   A.  Yes, sir.

18   Q.  Has anyone threatened you or coerced you in any way or

19   tried to force you to plead guilty?

20   A.  No, sir.

21   Q.  Has anyone other than the prosecution promised you anything

22   or offered you anything in order to get you to plead guilty?

23   A.  No, sir.

24   Q.  I've been given a letter dated October 15, 2014 from the

25   prosecutor to your attorney which is a plea agreement between

Eahithap ag                    PLEA

1    you and the government.  I'm going to have it marked as Court's

2    Exhibit 1.  And I'm going to ask my courtroom deputy to verify

3    that your signature appears on page 6 of Court's Exhibit 1.

4            THE COURTROOM DEPUTY:  Mr. Thaler, is that your

5    original signature signed today, October 17, 2014?

6            THE DEFENDANT:  Yes, ma'am.

7    Q.  Mr. Thaler, did you read this agreement prior to signing

8    it?

9    A.  Yes, your Honor.

10   Q.  Did you discuss it with your attorney before you signed it?

11   A.  Yes, sir.

12   Q.  Did you discuss every aspect of it with your attorney?

13   A.  Yes, sir.

14   Q.  And at the time you signed the agreement, did you

15   understand the agreement?

16   A.  Yes, sir.

17   Q.  Is this plea agreement the entire agreement between you and

18   the government?

19   A.  Yes, sir.

20   Q.  Is there any agreement, promise or understanding between

21   you and the government that is not set forth in this agreement?

22   A.  No, sir.

23   Q.  Has anyone coerced you or forced you or threatened you to

24   enter into the plea agreement?

25   A.  No, sir.

Eahithap ag                    PLEA

1    Q.  Other than what's set forth in the plea agreement, has

2    anyone promised you anything or offered you any inducement to

3    plead guilty or to enter into the plea agreement?

4    A.  No, sir.

5    Q.  Has anyone made a promise to you as to what your sentence

6    will actually be?

7    A.  No, sir.

8    Q.  It appears that you and the government have stipulated to,

9    which simply means agreed to, the appropriate calculation of

10   your sentencing range under the guidelines, although I notice

11   there is an agreement to disagree included in here, but there

12   is an agreement that the guideline range is somewhere between

13   51 and 87 months imprisonment.  Is that right, that you

14   stipulated to that as set forth in the agreement?

15   A.  Yes, your Honor.

16   Q.  Do you understand that the guidelines stipulation in the

17   agreement is binding on you, binding on the government, but

18   it's not binding on me?

19   A.  Yes, your Honor.

20   Q.  Do you understand that regardless of what you and the

21   government have agreed to I'm going to make my own

22   determination of your guideline range?

23   A.  Yes, your Honor.

24   Q.  And do you understand that under certain circumstances both

25   you and the government have the right to appeal any sentence

Eahithap ag                    PLEA

1    that I might impose subject to the terms of the plea agreement?

2    A.  Yes, sir.

3    Q.  And I see that on pages 4 and 5 of the plea agreement

4    there's what we often refer to as an appeal waiver provision.

5    Do you understand that under the plea agreement you are giving

6    up your right to appeal or otherwise challenge your sentence so

7    long as I sentence you to 87 months of imprisonment or less?

8    A.  Yes, sir.

9            THE COURT:  Let me just digress for one moment.  I see

10   in the plea agreement that there is this question left open

11   about one possible guideline enhancement under 3A1.2 which is

12   as I recall an official victim enhancement.  I also recall that

13   that applies to individuals who are victims.  I'm not resolving

14   anything today, but just for my own edification, in a very

15   general sense what is the government's position as to why

16   there's an enhancement under 3A1.2?  I haven't studied it.

17   That's just my recollection.

18           MS WOODS:  The government's position is that Section

19   3A1.2(a) applies because the victim in this case, that is

20   Sajeeb Wazeed Joy, is the son of the prime minister of

21   Bangladesh so he's an immediate family member of a government

22   official and was targeted because of that status and therefore

23   in the government's view the enhancement applies.

24           THE COURT:  You're saying that the Sentencing

25   Commission had in mind relatives of government officials in

Eahithap ag                      PLEA

1   foreign countries?

2              MS WOODS:  Yes, your Honor.  That's the government's

3   position.

4              THE COURT:  And Mr. Ser -- again I'm not resolving

5   this today, so we're clear on it, nothing wrong with that

6   agreement to disagree, but it did kind of jump out at me,

7   because I didn't quite see how it fit this case -- what's your

8   position on this?

9              MR. SER:  Exactly what your Honor questioned, whether

10  the guidelines apply to a relative outside the United States.

11             THE COURT:  A relative of a government official?

12             MR. SER:  All of whom are outside the United States,

13  correct.

14             THE COURT:  We'll address that obviously at the

15  appropriate time.

16  Q.  Mr. Thaler, have you clearly understood everything that's

17  happened here so far today?

18  A.  Yes, sir.

19  Q.  Now that you have been advised of the charges against you,

20  the possible penalties that you face, and the rights that

21  you're giving up, is it still your wish to plead guilty to

22  Counts 2 and 4 of the indictment?

23  A.  Yes, your Honor.

24             THE COURT:  Ms Woods, would you summarize for me what

25  you expect the government to prove if this case went to trial.

Eahithap ag                    PLEA

1          MS WOODS:  If this case were to go to trial the

2     government would prove beyond a reasonable doubt that from

3     September 2011 through March of 2012 the defendant, Johannes

4     Thaler, aided and abetted his co-defendant, former FBI Special

5     Agent Robert Lustyik, in soliciting cash payments in return for

6     disclosing internal confidential law enforcement information to

7     which Lustyik had access by virtue of his position with the

8     FBI.

9          The government's evidence, including testimony from

10     witnesses, as well as e-mails and text message communication

11     between Mr. Thaler and his co-defendant, Special Agent Lustyik,

12     and Mr. Ahmed, would establish that Mr. Thaler on behalf of

13     Mr. Lustyik sought a $40,000 retainer fee and regular monthly

14     payments of $30,000 from his co-defendant, Mr. Ahmed, in

15     exchange for Mr. Lustyik's official action in providing

16     information to Mr. Ahmed who was a native of Bangladesh and was

17     seeking information so that he could cause both reputational as

18     well as physical harm to the son of the current prime minister

19     of Bangladesh.

20          With respect to Count 4, if this case were to go to

21     trial, the government would prove beyond a reasonable doubt

22     that during that same time period, Mr. Thaler conspired with

23     co-defendants, Special Agent Lustyik and Mr. Ahmed, to commit

24     honest services wire fraud in violation of 18 U.S.C. Section

25     1343.  The government's evidence would include witness

Eahithap ag                    PLEA

1   testimony as well as the e-mail exchanges and the text message

2   communications between the co-defendants, which established

3   that the defendants agreed together to deprive the American

4   citizens and the FBI of the right to the honest services of

5   Special Agent Robert Lustyik for the purpose of executing the

6   aforementioned bribery scheme and that in carrying out that

7   scheme the defendants, incruding Mr. Thaler, transmitted by

8   means of interstate wires, various e-mails and text messages.

9            THE COURT:  Thank you, Ms Woods.

10  Q.  Mr. Thaler, did you hear what the prosecutor just said?

11  A.  Yes, sir.

12  Q.  Is it substantially accurate?

13  A.  Yes, sir.

14  Q.  What I need you to do now is tell me in your own words what

15  you did that makes you believe that you're guilty of the crimes

16  to which you have pleaded guilty.  Are you going to be reading

17  from a prepared statement?

18  A.  Yes, sir.

19  Q.  Nothing wrong with that.  I just want to make sure that

20  this is a document or a statement that you've prepared in

21  conjunction with your attorney or the assistance of your

22  attorney.

23  A.  Yes, I have.

24  Q.  You can read that.

25  A.  From in or about September 2011 through in and about March

Eahithap ag                    PLEA

1    2012 in the Southern District of New York I aided and abetted

2    Robert Lustyik, who during this time was an agent with the

3    United States Federal Bureau of Investigation, in soliciting

4    cash payments from individuals with the corrupt intention that

5    Robert Lustyik be influenced to disclose confidential

6    governmental information that Robert Lustyik has access to by

7    virtue of his position with the FBI.  At the time this occurred

8    I knew I what I was doing was illegal.

9         From in and about September 2011 through in and about

10   March 2012, in the Southern District of New York, I agreed with

11   others to participate in a fraudulent scheme to deprive the

12   citizens of the United States of Robert Lustyik's honest

13   services as an agent of the FBI.  I knew the objective of the

14   conspiracy.  I knowingly and voluntarily participated.  During

15   the conspiracy my conduct included sending and receiving

16   e-mails, telephone calls and text messages relating to the

17   bribery conduct.  At the time this occurred, I knew what I was

18   doing was illegal and acted with the specific intent to deprive

19   the United States of Robert Lustyik's honest services.

20        MR. SER:  Your Honor, we'll stip that the

21   transmissions occurred via interstate wire.

22        THE COURT:  Meaning the e-mails and text messages?

23        MR. SER:  Correct, your Honor.

24   Q.  Do you agree with that, Mr. Thaler?

25   A.  Yes, your Honor.

Eahithap ag                    PLEA

1   Q.  Where were you when you were engaged in these activities,

2   between September of 2011 and March of 2012?  Where were you

3   physically?

4   A.  Connecticut, I guess.

5   Q.  Where was Mr. Lustyik?

6   A.  In New York.

7   Q.  Where was his office?

8   A.  He worked in White Plains, New York.

9   Q.  Here in the Southern District of New York?

10  A.  Yes, sir.

11  Q.  When he worked here in White Plains, he was working as an

12  FBI agent, is that correct?

13  A.  Yes, sir.

14  Q.  You knew that?

15  A.  Yes, sir.

16  Q.  Did you know at the time that you did these things that

17  what you were doing was wrong and against the law?

18  A.  Yes, sir.

19  Q.  Did anyone threaten you or coerce you or force you to do

20  those things?

21  A.  No, your Honor.

22          THE COURT:  Ms Woods, do you believe there's a

23  sufficient factual predicate for a guilty plea to both Counts 2

24  and 4?

25          MS WOODS:  Yes, your Honor.

Eahithap ag                    PLEA

1          THE COURT:  Mr. Ser, do you agree with that?

2          MR. SER:  Yes, your Honor.

3          THE COURT:  Are there any additional questions either

4    of you would like me to ask the defendant?

5          MS WOODS:  No, your Honor.

6          MR. SER:  No, your Honor.

7          THE COURT:  Mr. Ser, do you know of any valid defense

8    that would prevail at trial or any reason why your client

9    should not be permitted to plead guilty?

10          MR. SER:  No, your Honor.

11   Q.  Mr. Thaler, how do you now plead to the charge in Count 2

12   of the indictment, guilty or not guilty?

13   A.  Guilty.

14   Q.  How do you now plead to the charge in Count 4 of the

15   indictment, guilty or not guilty?

16   A.  Guilty.

17   Q.  Are you in fact guilty of the charge in Count 2?

18   A.  Yes, your Honor.

19   Q.  Are you in fact guilty of the charge in Count 4?

20   A.  Yes, your Honor.

21   Q.  Are you pleading guilty voluntarily and of your own free

22   will as to Count 2?

23   A.  Yes, sir.

24   Q.  Are you plead guilty voluntarily and of your own free will

25   as to Count 4?

Eahithap ag                  PLEA

1   A.  Yes, sir.

2          THE COURT:  On the basis of the defendant's responses

3   to my questions and my observations of his demeanor I'm

4   satisfied that he understands his rights and he waives them

5   knowingly and voluntarily with an understand of the

6   consequences of his guilty plea including the potential

7   sentences that may be imposed; further, that he has voluntarily

8   pleaded guilty, that he has admitted he is guilty as charged in

9   Counts 2 and 4 of the indictment, and that his plea is entered

10  knowingly and voluntarily and supported by an independent

11  factual basis as to each and every element of the crimes

12  charged.  Accordingly, I accept the defendant's guilty plea and

13  adjudge him guilty on the charges in Counts 2 and 4 of the

14  indictment.

15         I'll direct that a presentence investigation be

16  conducted by the Probation Office and that a presentence report

17  be prepared.

18         Mr. Thaler, you're going to be interviewed by a

19  probation officer as part of the presentence investigation and

20  when you do that you should definitely have your attorney with

21  you.  If you say anything to the probation officer make sure

22  that what you say is truthful and accurate because I'll tell

23  you now that the presentence report is important to me,

24  including any descriptions of anything that you've said to the

25  probation officer, in deciding what sentence to impose.  So as

Eahithap ag                    PLEA

1    I say, make sure that you do speak to the probation officer,

2    what you tell him or her is truthful and accurate.  Will you to

3    that?

4             THE DEFENDANT:  Yes, your Honor.

5             THE COURT:  You and your attorney will have an

6    opportunity to examine the report and challenge and comment on

7    it before I sentence you.  So for that reason it's important

8    that you read the presentence report carefully and discuss it

9    with your attorney before your sentencing date.  If there are

10   any mistakes in the report or anything you object to in the

11   report you need to point them out to your attorney so he can

12   bring those things to my attention before I impose sentence.

13   Will you do that?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  And at the time of sentencing both you and

16   your attorney will also have the right to speak on your behalf

17   before I impose sentence.  Do you understand that?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  I'm going to schedule sentencing

20   approximately 90 days from today.

21            THE COURTROOM DEPUTY:  Friday, January 23, 2015 at

22   11:30.

23            THE COURT:  Before I set that date, I understand that

24   Mr. Thaler has pleaded guilty in another case in the District

25   of Utah.  When is the sentencing date in that case?

Eahithap ag                    PLEA

1          MS WOODS:  I believe that's January 5, your Honor.

2          THE COURT:  So this would not conflict with that, is

3     that correct?

4          MS WOODS:  No.

5          MR. SER:  That's correct, your Honor, I agree.

6          THE COURT:  Does that work for both counsel, January

7     23rd at 11:30 a.m.?

8          MS WOODS:  Yes, your Honor.

9          MR. SER:  Yes, your Honor.

10          THE COURT:  The sentencing is scheduled for January

11    23, 2015 at 11:30 a.m.  Any written submissions by the

12    defendant will be due no later than one week before sentencing

13    and any response by the government will be due no later than

14    three days before sentencing, particularly if there is going to

15    be a dispute about a guidelines provision.  I know the

16    defendant is out on bail.  What's the government's position as

17    to whether that status should continue?

18          MS WOODS:  The government consents to continuing that

19    status.

20          THE COURT:  All right.  Then I will continue the

21    defendant's release on bail.  Mr. Thaler, you understand that

22    if you fail to return to my courtroom for sentencing on the

23    date and time set which is January 23, 2015 at 11:30 a.m. you

24    will be guilty of a separate crime which is called bail-jumping

25    for which you could be sentenced to imprisonment and a fine

Eahithap ag                    PLEA

1    separate and apart from and in addition to whatever sentence

2    you might receive for the crimes to which you just pleaded

3    guilty.

4                THE DEFENDANT:  Yes, your Honor.

5                THE COURT:  Do you further understand that all the

6    conditions on which you were released up until now continue to

7    apply and that the consequences could be very serious if you

8    violate any of those conditions?

9                THE DEFENDANT:  Yes, sir.

10               THE COURT:  Bail will be continued.  Let me ask just

11   one other question.  Is any consideration being given to a

12   Rule 20 transfer of this case, either of this case to Utah or

13   the Utah case to here, since the defendant is going to be

14   sentenced on both cases around the same time?  You're not

15   required to do that.  Has any discussion been had?  There is an

16   efficiency in doing that.  Mr. Ser, have you given any thought

17   to that?

18               MR. SER:  I have not thought about it nor have we

19   discussed it.  Certainly the parties will talk about it very

20   quickly.

21               THE COURT:  Just so we're clear, I'm not making any

22   suggestion that you, it requires the consent of both parties,

23   in fact it requires the consent of the United States Attorneys

24   and the judges in both districts so it's a somewhat cumbersome

25   process.  But in the end, given the unique circumstances of

Eahithap ag                    PLEA

1    this case, namely that the defendant, Mr. Thaler, and

2    Mr. Lustyik, were charged both in the District of Utah and the

3    Southern District of New York at approximately the same time

4    and that Mr. Thaler is going to be sentenced in both districts

5    or in both cases at approximately the same time, it just

6    occurred to me that you might want to at least consider it.

7    But I'll leave that up to you.  It's just a matter of

8    curiosity.

9           MR. SER:  I appreciate the suggestion, your Honor, the

10   parties will talk.

11          THE COURT:  Anything else we need to do today with

12   respect to Mr. Thaler?

13          MS WOODS:  No, your Honor.

14          THE COURT:  Mr. Ser?

15          MR. SER:  No, your Honor your Honor, thank you.

16          THE COURT:  Thank you all very much.  I'll see you on

17   January 23rd.

18          Mr. Ser, are you aware that defense counsel are now

19   under an obligation to at least schedule a presentence

20   interview within the next two weeks?  It doesn't have to occur

21   within the next two weeks but you have to agree on a date

22   within two weeks.  And Ms Woods, the standing order requires

23   the government to provide its proposed offense conduct portion

24   of the presentence report to the probation officer within the

25   next two weeks, so I'll expect you all to comply with that.

Eahithap ag                    PLEA

1              MS WOODS:  Yes, your Honor.

2              THE COURTROOM DEPUTY:  All rise.

3              This court will be in recess.

4              (Proceedings adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25