Eahiahmp ag                    PLEA

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              13 Cr. 616 VB

5    RIZVE AHMED,

6                   Defendant.

7    ------------------------------x

8                                             October 17, 2014
                                              2:15 p.m.
9                                             White Plains, N.Y.

10   Before:

11                   HON. VINCENT L. BRICCETTI,

12                                          District Judge

13                        APPEARANCES

14   PREET BHARARA
          United States Attorney for the
15        Southern District of New York
     EMILY RAE WOODS
16   BENJAMIN ALLEE
          Assistant United States Attorneys
17
     BRAD HENRY
18        Attorney for Defendant

19

20   KERWIN JOHN, DOJ

21

22
                             PLEA
23

24

25

Eahiahmp ag                    PLEA

1          THE COURTROOM DEPUTY:  United States v. Rizve Ahmed.

2     Will counsel please state their appearances.

3          MS WOODS:  Rae Woods for the government.  With me is

4     Benjamin Allee and Kerwin John.

5          MR. HENRY:  Brad Henry for Mr. Ahmed.

6          THE COURT:  Good afternoon, everybody.  Have a seat.

7          Mr. Henry, does your client have an application?

8          MR. HENRY:  He does, your Honor.  We would ask the

9     Court at this time for Mr. Ahmed to be able to change his plea

10    from not guilty to guilty.

11         THE COURT:  And I understand that's with respect to

12    Counts 3 and 4 of the indictment?

13         MR. HENRY:  That is correct, your Honor.

14         THE COURT:  In full satisfaction of the indictment?

15         MR. HENRY:  Correct, your Honor.

16         THE COURT:  All right.  Mr. Ahmed, I've been advised

17    that you wish to plead guilty to Counts 3 and 4 of indictment

18    13 Cr. 616.  Is that correct?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Before I accept your guilty plea I'm going

21    to ask you a number of questions.  It's very important that you

22    answer these questions honestly and completely and that's

23    because the purpose of my questions is to make sure that you

24    understand your rights and that you're pleading guilty of your

25    own free will.  I also want to make sure that you are pleading

Eahiahmp ag                    PLEA

1   guilty because you are guilty and not for some other reason and

2   that you fully understand the consequences of your plea.

3   Therefore, it's important that you understand every question

4   before you answer it.  So if you don't understand a question

5   that I ask you, don't answer it, tell me you don't understand

6   it and I'll either rephrase it or I'll give you an opportunity

7   to discuss the matter with your attorney.  You can ask him

8   anything you want for as long as you want.  Will you do that,

9   please?

10              THE DEFENDANT:  Yes, I will.

11              THE COURT:  Ms Hilbert, would you please swear the

12   defendant.

13              (Defendant placed under oath)

14   BY THE COURT:

15   Q.  Mr. Ahmed, you're now under oath.  What that means is that

16   if you answer any of my questions falsely your answers could

17   later be used against you in a prosecution for perjury or for

18   making a false statement.  Do you understand that?

19   A.  Yes.

20   Q.  What is your full name?

21   A.  Rizve Ahmed.

22   Q.  How old are you, sir?

23   A.  35.

24   Q.  How far did you go in school?

25   A.  I got a bachelor in marketing and business.

Eahiahmp ag                    PLEA

1   Q.  Where was that?

2   A.  Western Connecticut State University.

3   Q.  That's in Danbury?

4   A.  In Danbury.

5   Q.  Are you now or have you recently been under the care of a

6   doctor or psychiatrist?

7   A.  No.

8   Q.  Have you ever been treated or hospitalized for any mental

9   illness?

10  A.  No.

11  Q.  Have you ever been treated or hospitalized for any

12  addiction to drugs or alcohol?

13  A.  No.

14  Q.  In the last 24 hours have you taken any drugs or any

15  medicine or pills, or consumed any alcohol.

16  A.  No.

17  Q.  Is your mind clear today?

18  A.  Yes.

19  Q.  Do you understand what's happening here today?

20  A.  Yes.

21  Q.  Have you had enough time to and opportunity to discuss your

22  case with your attorney?

23  A.  Yes.

24  Q.  Have you discussed with him the charges against you

25  including any possible defenses you might have?

Eahiahmp ag                    PLEA

1   A.  Yes.

2   Q.  Have you discussed with him the consequences of entering a

3   plea of guilty?

4   A.  Yes.

5   Q.  Are you satisfied with your attorney's representation of

6   you?

7   A.  Yes.

8          THE COURT:  Does either counsel have any doubt as to

9   the defendant's competence to plead guilty at this time?

10  Ms Woods?

11         MS WOODS:  No, your Honor.

12         THE COURT:  Mr. Henry?

13         MR. SER:  No, your Honor.

14         THE COURT:  Based on the defendant's responses to my

15  questions and my observations of his demeanor, I find that he

16  is fully competent to enter an informed guilty plea at this

17  time.

18  Q.  Mr. Ahmed I'm going to explain certain constitutional

19  rights that you have and these are rights that you would be

20  giving up if you enter a guilty plea.  So again, stop me if

21  there's anything you don't understand and either I or your

22  attorney will explain the matter more fully.

23         First, under the Constitution and laws of the United

24  States you have a right to plead not guilty to the charges

25  contained in this indictment.  Do you understand that?

Eahiahmp ag               PLEA

1   A.   Yes.

2   Q.   If you did plead not guilty or persisted in the previous

3   not guilty plea that you entered you would be entitled to a

4   speedy and public trial by a jury on the charges contained in

5   the indictment.  Do you understand that?

6   A.   Yes.

7   Q.   At that trial you would be presumed to be innocent and the

8   government would be required to prove you guilty by competent

9   evidence beyond a reasonable doubt before you could be found

10  guilty.  You would not have to prove that you were innocent.

11  Do you understand that?

12  A.   Yes.

13  Q.   If there were a jury trial you could not be convicted

14  unless a jury of twelve people unanimously agreed that you were

15  guilty beyond a reasonable doubt.  Do you understand that?

16  A.   Yes.

17  Q.   At that trial and at every other stage of your case you

18  would have the right to be represented by an attorney.  If you

19  could not afford an attorney, the Court would appoint one to

20  represent you at no cost to you.  Do you understand that?

21  A.   Yes.

22  Q.   Mr. Henry is retained, am I right?

23  A.   Yes.

24  Q.   You retained him.  I want to make sure you know that if you

25  could not afford an attorney at any point, the Court would

Eahiahmp ag                    PLEA

appoint an attorney to represent you at no cost to you, even

though Mr. Henry has been retained by you.  Do you understand

that?

A.  Yes.

Q.  During a trial the witnesses for the government would have

to come to court and testify in your presence where you could

see them and hear them, your lawyer could cross-examine these

witnesses and object to evidence offered by the government.

Also, your lawyer could offer evidence on your behalf and you

would be able to use subpoenas to compel witnesses to come to

court and testify in your defense even if they did not want to

come.  Do you understand all of that?

A.  Yes.

Q.  At a trial you would have the right to testify if you chose

to do so.  You would also have the right not to testify.  If

you chose not to testify, that could not be used against you in

any way.  No inference or suggestion of guilty could be drawn

from the fact that you did not testify.  Do you understand

that?

A.  Yes.

Q.  If you were convicted at a trial you would have the right

to appeal that verdict to a higher court.  Do you understand

that?

A.  Yes.

Q.  Even now you have the right to change your mind.  In other

1    words, you can plead not guilty or persist in your previously

2    entered not guilty plea and go to trial.  Do you understand

3    that?

4    A.  Yes.

5    Q.  But if you do plead guilty and I accept your plea you will

6    be giving up your right to a trial and all of the other trial

7    rights that go with it that I've just described.  If you plead

8    guilty there will be no trial and I will enter a judgment of

9    guilty and sentence you on the basis of your guilty plea after

10   considering the presentence report prepared by the Probation

11   Department and after considering any submissions I get from

12   you, your attorney and the government.  Do you understand that?

13   A.  Yes.

14   Q.  Finally, if you do plead guilty you will also be giving up

15   your right not to incriminate yourself and I will ask you

16   questions about what you did in order to satisfy myself that

17   you are in fact guilty as charged.  Do you understand that?

18   A.  Yes.

19   Q.  Mr. Ahmed, have you received a copy of the indictment in

20   this case, docket number 13 Cr. 616?

21   A.  Yes.

22   Q.  Have you read the indictment?

23   A.  Yes.

24   Q.  Have you discussed it with your attorney?

25   A.  Yes.

Eahiahmp ag                    PLEA

1   Q.  Do you understand that you're charged with the following

2   offenses in Counts 3 and 4?  I'm just going to summarize them

3   I'm not going to repeat everything that's in the indictment.  I

4   just want to make sure you understand what you're charged with.

5          In Count 3 you're charged with offering bribes to a

6   public official.  And specifically, it's alleged that you gave

7   and offered cash payments to Robert Lustyik and Johannes Thaler

8   with the intent to induce Lustyik to disclose confidential

9   government information to which Lustyik had access by virtue of

10  his position as a special agent with the Federal Bureau of

11  Investigation.  Do you understand that that's the gist of what

12  you're charged with in Count 3?

13  A.  Yes.

14  Q.  And then in Count 4 you're charged with conspiring to

15  defraud the citizens of the United States, basically that you

16  agreed with Mr. Lustyik and Mr. Thaler to devise and intended

17  to device a scheme and artifice to defraud and obtain money and

18  property and to deprive the citizens of the United States of

19  their right to the honest services of Mr. Lustyik.  Do you

20  understand that?

21  A.  Yes.

22  Q.  The so-called honest services conspiracy.  Do you

23  understand that?

24  A.  Yes.

25          THE COURT:  Ms Woods, could you tell me the essential

Eahiahmp ag              PLEA

1    elements of the offense.  Do them one at a time, first the

2    offense charged in Count 3 and then Count 4.

3          MS WOODS:  For Count 3 the essential elements include

4    that the defendant directly or indirectly corruptly offered,

5    gave, or promised to give a thing of value to a public official

6    and that he did so intending to influence the public official

7    in the performance of an official act.

8          THE COURT:  Okay.  Count 4.

9          MS WOODS:  For Count 4 the elements require the

10   government to prove that two or more people agreed to commit

11   honest services wire fraud, that the defendant willfully joined

12   in that agreement; and that one of the conspirators committed

13   an overt act during the time period of the conspiracy in an

14   effort to further the conspiracy.

15         THE COURT:  Thank you, Ms Woods.

16   Q.  Mr. Ahmed, do you understand that if you did not plead

17   guilty to Count 3, the government would have to prove each and

18   every element of that charge beyond a reasonable doubt at

19   trial?

20   A.  Yes.

21   Q.  Do you understand that if you did not plead guilty to Count

22   4 the government would have to prove each and every element of

23   that charge beyond a reasonable doubt at trial?

24   A.  Yes.

25   Q.  Do you understand that the maximum possible penalties for

Eahiahmp ag                    PLEA

these offenses are as follows?  Starting with Count 3 which is

the bribery count.  Count 3, the maximum term of imprisonment

is 15 years, the maximum term of supervised release is three

years, the maximum fine is the greatest of $250,000 or twice

the gross pecuniary gain derived from the offense or twice the

gross pecuniary loss to persons other than you resulting from

the offense, and there's also a $100 mandatory special

assessment.  That last item, the mandatory special assessment,

is mandatory.  I have no discretion in that matter.  I have to

impose that.  Do you understand that those are the maximum

possible punishments for the offense charged in Count 3?

A.  Yes.

Q.  Now, as to Count 4 which is the conspiracy charge, the

maximum possible punishments are as follows.  A maximum term of

imprisonment of 20 years; a maximum term of supervised release

of three years; a maximum fine of the greatest of $250,000 or

twice the gross pecuniary gain derived from the offense or

twice the gross pecuniary loss to persons other than you

resulting from the offense; and there's also a hundred dollar

mandatory special assessment.  That's on Count 4.  Do you

understand all that?

A.  Yes.

Q.  Let me just tell you something about supervised release

which I just mentioned.  Supervised release means that if I

sentence you to prison, you will be subject to monitoring after

Eahiahmp ag                    PLEA

1   your release from prison and there are rules and conditions of

2   supervised release that you'd have to follow while you were on

3   supervised release, and if you violated those rules you could

4   be returned to prison without a jury trial, serve additional

5   time even beyond your original sentence.  If that would happen

6   you would be given no credit for time served in prison on your

7   original sentence and no credit for any time spent on

8   supervised release.  Do you understand that?

9   A.  Yes.

10  Q.  You should also understand that parole has been abolished

11  in the federal system and that if you're sentenced to prison

12  you will not be released early on parole.  Do you understand

13  that?

14  A.  Yes.

15  Q.  You are a U.S. citizen, am I correct?

16  A.  Yes.

17  Q.  Now, as part of your sentence I could also order

18  restitution to any person injured as a direct result of your

19  criminal conduct.  Do you understand that?

20  A.  Yes.

21          THE COURT:  Ms Woods, is the government aware of any

22  basis for restitution in this case?

23          MS WOODS:  No, your Honor.

24          THE COURT:  Thank you.

25  Q.  Mr. Ahmed, I could do it in theory, the law permits me to

order restitution, but the government has advised me that they

are not aware of any basis for restitution.

　　　　　Now, there are no mandatory minimum punishments for

these two offenses with the exception of the mandatory special

assessment.  It's a hundred dollars on each count.  So the

mandatory minimum would be a hundred dollars special assessment

on Count 3, a hundred dollars on Count 4 for a total of two

hundred dollars, do you understand that?

A.  Yes.

Q.  Because you're pleading guilty to two different counts in

this indictment, I will be imposing a separate sentence on each

count.  Do you understand that?

A.  Yes.

Q.  And do you further understand that I may order you to serve

sentences either concurrently, meaning that you would serve

both sentences at the same time, or consecutively, meaning that

you would serve the sentences one after the other?

A.  Yes.

Q.  So do you understand that if I impose consecutive

sentences, meaning one after the other, your sentence could be

a maximum total of 35 years in prison?

A.  Yes.

Q.  Do you further understand that if I accept your guilty plea

and adjudge you guilty, that adjudication may deprive you of

valuable civil rights such as the right to vote, the right to

1    hold public office, the right to serve on a jury, the right to

2    possess any kind of firearm, and the right to hold certain

3    professional licenses?

4    A.  Yes.

5    Q.  Now, have you talked with your attorney about how the

6    Federal Sentencing Guidelines apply to your case?

7    A.  Yes.

8    Q.  In imposing sentence I'm required to consider the

9    guidelines, which are a set of rules and recommendations for

10   determining an appropriate sentence.  I'm required to calculate

11   the applicable guideline range and consider that range.  I also

12   have to determine whether there should be any upward or

13   downward departure from the range.  And while I must pay close

14   attention to the guidelines in returning a sentence, in the end

15   I'm required to impose a sentence that I believe best satisfies

16   the purposes of the criminal law based on the sentencing

17   factors set forth in Section 3553(a) of Title 18 of the United

18   States Code, even if that sentence is higher or lower than what

19   the guidelines recommend.  Do you understand that?

20   A.  Yes.

21   Q.  I won't be able to determine how the guidelines apply to

22   your case until after a presentence report has been prepared by

23   the Probation Office and you and the government have had a

24   chance to comment on or challenge anything in the report.  Do

25   you understand that?

Eahiahmp ag                    PLEA

1    A.  Yes.

2    Q.  Do you understand that if your attorney or anyone else has

3    attempted to predict what your sentence will be, that

4    prediction could be wrong?

5    A.  Yes.

6    Q.  I'm telling you this because you need to understand that no

7    one can be sure now what your sentence will be.  It's my job to

8    decide what your sentence will be and I'm not going to do that

9    now.  I'm going to wait until after the presentence report is

10   completed and I've ruled on any challenges to the report,

11   calculated the sentencing range, determined whether there are

12   grounds to depart from the range and considered all of the

13   factors set forth in Section 3553(a) so nobody, not even I, can

14   predict what the sentence will be in your case.  Do you

15   understand all of that?

16   A.  Yes.

17   Q.  Do you also understand that even if your sentence is

18   different from what your attorney or anyone else told you it

19   might be, or if it's different from what you expect it to be,

20   or from what may be contained in the plea agreement with the

21   government, that you have with the government, once you've

22   pleaded guilty you will not be allowed to withdraw your plea.

23   Do you understand that?

24   A.  Yes.

25   Q.  Has anyone threatened you or coerced you in any way or

1    tried to force you to plead guilty?

2    A.  No.

3    Q.  Has anyone other than the prosecution promised you or

4    offered you anything in order to get you to plead guilty?

5    A.  No.

6    Q.  I've been given a letter dated October 16, 2014 from the

7    prosecutor to your attorney which is a plea agreement between

8    you and the government.  I'm going to have it marked as Court's

9    Exhibit 1 and I'm going to ask my courtroom deputy to verify

10   that your signature appears on page 6 of that agreement,

11   Court's Exhibit 1.

12            THE COURTROOM DEPUTY:  Mr. Ahmed, is that your

13   original signature signed today October 17, 2014?

14            THE DEFENDANT:  Yes.

15   Q.  Mr. Ahmed, did you read this agreement prior to signing it?

16   A.  Yes.

17   Q.  Did you discuss it with your attorney prior to signing it?

18   A.  Yes.

19   Q.  Did you discuss every aspect prior to signing it?

20   A.  Yes.

21   Q.  And at the time you signed the agreement did you understand

22   it?

23   A.  Yes.

24   Q.  Is this plea agreement the entire agreement between you and

25   the government?

Eahiahmp ag                    PLEA

1    A.  Yes.

2    Q.  Is there any agreement, promise or understanding between

3    you and the government that's not set forth in this agreement?

4    A.  No.

5    Q.  Has anyone threatened you or coerced you or forced you to

6    enter into the plea agreement?

7    A.  No.

8    Q.  Other than what's contained in the plea agreement has

9    anyone promised you anything or offered you any inducement to

10   plead guilty or to enter into the plea agreement?

11   A.  No.

12   Q.  Has anyone made a promise to you as to what your sentence

13   will be?

14   A.  No.

15   Q.  Now, it appears that you and the government have stipulated

16   to, which simply means agreed to, the appropriate calculation

17   of your sentencing range under the guidelines, although I see

18   that there's also a portion of the agreement that remains in

19   dispute, in other words it's an agreement to disagree about one

20   particular guidelines adjustment.  But the agreement to

21   disagree is part of the stipulation.  Are you aware of that

22   stipulation?

23   A.  Yes.

24   Q.  According to the stipulation, the agreed-upon sentencing

25   range is anywhere from, depending on how I come out on that one

Eahiahmp ag                    PLEA

1    disputed item, anywhere between 70 months and 121 months

2    imprisonment.

3    A.   Yes.

4    Q.   Do you understand that?  And do you understand that the

5    guidelines stipulation in the plea agreement is binding on you

6    and it's binding on the government but it's not binding on me?

7    A.   Yes.

8    Q.   Do you understand that regardless of what you and the

9    government agree to, I'm going to make my own determination of

10   your guideline range?

11   A.   Yes.

12   Q.   Do you understand that under certain circumstances, both

13   you and the government have the right to appeal any sentence

14   that I might impose subject to the terms of the plea agreement?

15   A.   Yes.

16   Q.   And I see that on page 4 of the agreement, going over to

17   page 5, there is what we refer to as an appeal waiver provision

18   and I want to make sure that you understand that.  Do you

19   understand that under the plea agreement you're giving up your

20   right to appeal or otherwise challenge your sentence so long as

21   I sentence you to 121 months imprisonment or less?

22   A.   Yes.

23   Q.   Mr. Ahmed, have you understood everything that's happened

24   here today so far?

25   A.   Yes.

Q.  Now that you've been advised of the charges against you and the possible penalties that you face and the rights that you're giving up, is it still your wish to plead guilty to Counts 33 and 4 of the indictment?

A.  Yes.

        THE COURT:  Would the government please summarize what it would expect to prove if this case went to trial.

        MS WOODS:  If this case were to go to trial, the government would prove beyond a reasonable doubt that from September 2011 through March 2012, the defendant, Rizve Ahmed, paid cash bribes and promised to pay additional cash bribes to co-defendant former FBI Special Agent Robert Lustyik and Mr. Johannes Thaler, and that he paid those bribes in return for Mr. Lustyik's disclosing internal confidential law enforcement information to which Mr. Lustyik had access by virtue of his position with the FBI.  The government's evidence, which would include the defendant's own admissions, testimony from witnesses, as well as text and email communications between Mr. Ahmed and his co-conspirators, would establish that Mr. Ahmed pursued an arrangement whereby he would pay a $40,000 retainer fee and would also pay regular monthly payments of $30,000 to Special Agent Lustyik through Mr. Thaler in exchange for Special Agent Lustyik's official action in providing confidential law enforcement information to Mr. Ahmed, and for Mr. Lustyik's official assistance in

Eahiahmp ag                    PLEA

dismissing charges against a political alley of Mr. Ahmed.  The

government's evidence would prove that Mr. Ahmed, who is a

native of Bangladesh, was involved in Bangladesh politics and

was seeking the information so that he could kidnap and cause

reputational and physical harm to the son of the Bangladesh

prime minister.  The government's evidence would also prove

that from September 2011 through March 2012, Mr. Ahmed

conspired with co-defendant Special Agent letter Lustyik and

Mr. Thaler to commit honest services wire fraud in violation of

18 U.S.C. 1343.  The government's evidence, which would include

the defendant's own statements, witness testimony and e-mail

and text message communications between Mr. Ahmed and his

co-defendants, would establish that they agreed together to

deprive the American citizens and the FBI of the rights to the

honest services of Special Agent Lustyik for the purpose of

executing the bribery scheme and that in carrying out that

scheme the defendants transmitted or caused to be transmitted

by means of interstate wires various e-mails and text messages.

        THE COURT:  Thank you, Ms Woods.

Q.  Mr. Ahmed, did you hear what the prosecutor just said?

A.  Yes.

Q.  Is it substantially accurate?

A.  Yes.

Q.  What I need you to do now is tell me in your own words what

you did that makes you believe you are guilty of the crimes to

Eahiahmp ag                    PLEA

1   which you are pleading guilty.  Are you going to be reading

2   from a written statement?

3   A.  Yes.

4   Q.  That's fine.  I just want to verify that this is something

5   that you prepared in conjunction and with the assistance of

6   your attorney.

7   A.  Yes.

8   Q.  All right.  You can go ahead and read it.

9   A.  Between in or about September 2011 through in or about

10  March 2012 I directly offered money to Johannes Thaler and

11  Robert Lustyik, knowing that Lustyik was an FBI agent, at 26

12  Federal Plaza in the Southern District of New York with the

13  intent to induce Lustyik to do an act in violation of his

14  lawful duty.  I knew what I was doing was illegal.

15          Between in or about 2011 through in or about March

16  2012, I agreed with others to defraud the United States by

17  depriving the United States of the honest services of Robert

18  Lustyik, through transmitting through the phone, text messages

19  and e-mail, offering money with the intent to induce Lustyik to

20  do an act in violation of his lawful authority.  I knew what I

21  was doing was illegal.  I specifically intended to deprive the

22  United States of Robert Lustyik's honest services.  I knew the

23  object of the conspiracy and I voluntarily participated.  And I

24  knowingly and voluntarily participated.

25          THE COURT:  You mentioned e-mails and text messages.

Eahiahmp ag                    PLEA

1    Mr. Henry, do you stipulate or otherwise concede that those

2    were interstate wire communications?

3              MR. HENRY:  Yes, your Honor.

4    Q.  Mr. Ahmed, did you understand that Mr. Lustyik worked as an

5    agent of the FBI in New York City, in Westchester County?

6    A.  Yes.

7    Q.  You mentioned 26 Federal Plaza.  Is that in Manhattan?

8    A.  Yes.

9    Q.  Did you know at the time that you did these things that

10   what you were doing was wrong and against the law?

11   A.  Yes.

12   Q.  Did anyone threaten you or coerce you or force you to do

13   these things?

14   A.  No.

15             THE COURT:  Ms Woods, do you believe there is a

16   sufficient factual predicate for a guilty plea?

17             MS WOODS:  Yes, your Honor.

18             THE COURT:  Do you agree with that, Mr. Henry?

19             MR. SER:  Yes, your Honor.

20             THE COURT:  Are there any additional questions either

21   of you would like me to ask the defendant?  Ms Woods?

22             MS WOODS:  No, your Honor.

23             THE COURT:  Mr. Henry?

24             MR. SER:  No thank you, your Honor.

25             THE COURT:  Mr. Henry, do you know of any valid

Eahiahmp ag                    PLEA

1  defense that would prevail at trial or any reason why your

2  client should not be permitted to plead guilty?

3         MR. SER:  I do not.

4  Q.  How do you now plead to the charge in Count 1 of the

5  indictment, the bribery charge, Count 3, I apologize, I

6  misspoke --

7  A.  Guilty.

8  Q.  Hold on -- which is the bribery charge.  Guilty or not

9  guilty?

10 A.  Guilty.

11 Q.  How do you now plead to the charge in Count 4 of the

12 indictment which is the conspiracy charge, guilty or not

13 guilty?

14 A.  Guilty.

15 Q.  Are you in fact guilty of the charge in Count 3?

16 A.  Yes.

17 Q.  Are you in fact guilty of the charge in Count 4?

18 A.  Yes.

19 Q.  Are you pleading guilty voluntarily and of your own free

20 will as to Count 3?

21 A.  Yes.

22 Q.  Are you pleading guilty voluntarily and of your own free

23 will as to Count 4?

24 A.  Yes.

25         THE COURT:  On the basis of the defendant's responses

Eahiahmp ag                        PLEA

1    to my questions and my observations of his demeanor I'm

2    satisfied that he understands his rights and is waiving them

3    knowingly and voluntarily with an understanding of the

4    consequences of his guilty plea including the potential

5    sentences that may be imposed, that he is voluntarily pleading

6    guilty, that he has admitted that he is guilty as charged in

7    Counts 3 and 4 of the indictment and that his plea is entered

8    knowingly and voluntarily and is supported by an independent

9    factual basis as to each and every element of the crimes

10   charged.  Accordingly, I accept the defendant's guilty plea and

11   adjudge him guilty of the charges in Counts 3 and 4.  I direct

12   that a presentence investigation be conducted by the Probation

13   Department and that a presentence report be prepared.

14        You're going to be interviewed by a probation officer

15   and you can and you should definitely have your attorney with

16   you during that interview.  Now, I want you to make sure that

17   anything that you do say to the probation officer is truthful

18   and accurate.  The reason for that is that the presentence

19   report is very important to me in deciding what sentence to

20   impose.  And the report is going to include a description of

21   anything that you might have said to the probation officer.  So

22   if you decide to speak to the probation officer, just make sure

23   that what you say is truthful and accurate.

24   A.  Yes.

25   Q.  It's going to be important to me, okay?  And you and your

Eahiahmp ag                    PLEA

1   attorney will have an opportunity to examine the report and

2   challenge and comment on it before I sentence you, so it's

3   important that you read it, read the presentence report

4   carefully and discuss it with your attorney before your

5   sentencing date.  If there are any mistakes in the report or

6   anything that you object to, please point them out to your

7   attorney so that he can bring them to my attention before I

8   impose sentence.  Will you do that?

9   A.  Yes.

10  Q.  And you and your attorney will also both have the right to

11  speak on your behalf before sentencing.

12          THE COURT:  We will set a date approximately 90 days

13  out.  How about January 23, 2015 at two p.m.  Does that work?

14  Let's make it 2:30 p.m.  Does that work?

15          MR. SER:  Yes, your Honor.

16          MS WOODS:  Yes, your Honor.

17          THE COURT:  January 23rd at 2:30 p.m.  That's the

18  sentencing date.  Any written submissions by the defendant will

19  be due no later than one week before sentencing and any

20  response by the government will be due three days before

21  sentencing.

22          Now, the defendant has been released on bail with a

23  number of conditions.  Does the government have any objection

24  to the present bail status being continued until the date of

25  sentencing?

Eahiahmp ag                    PLEA

1          MS WOODS:  Yes, your Honor.  The government would

2    request that the defendant be held pursuant to 18 U.S.C. 1343.

3          THE COURT:  You mean 3143 I assume.

4          MS WOODS:  3143, my mistake, your Honor.

5          THE COURT:  What specifically about that statute?

6          MS WOODS:  Under that provision, the Court shall order

7    that a person who has been found guilty of an offense be

8    detained unless the Court finds by clear and convincing

9    evidence that the person is not likely to flee or pose a danger

10   to the safety of any other person or the community if released.

11         THE COURT:  All right.  Is it your view that the Court

12   cannot find by clear and convincing evidence that the defendant

13   is not likely to flee or pose a danger to the safety of another

14   person or the community?

15         MS WOODS:  Yes, your Honor.

16         THE COURT:  Why is that?

17         MS WOODS:  The government views Mr. Ahmed as a

18   substantial flight risk.  Now that he has pled guilty for the

19   crime with which he was charged, we ask that he be detained

20   pending sentencing.

21         THE COURT:  Well he's a U.S. citizen, is that correct?

22         MS WOODS:  Yes.  Although he was born in Bangladesh

23   and lived there for 14 years.  It's relevant because --

24         THE COURT:  It's not relevant, let me stop you right

25   there.  He's got connections in a foreign country?  So do I.

Eahiahmp ag                    PLEA

1   If I get arrested are you going to seek my detention?  Family

2   connections in a foreign country?  That's not relevant.  He is

3   a U.S. citizen, correct?

4            MS WOODS:  Yes, your Honor.

5            THE COURT:  What else?  Why do you think he's a

6   substantial flight risk other than the fact that he was born in

7   a foreign country and has connections to that country?

8            MS WOODS:  The nature and circumstances of the offense

9   here.  The crimes by their very nature involved Mr. Ahmed

10  corrupting a public official to obtain confidential law

11  enforcement information to which he should not have been privy.

12           THE COURT:  Let me stop you right there.  As you know,

13  Mr. Ahmed's co-defendant, Mr. Thaler, who was charged with

14  essentially the same thing pleaded guilty earlier today and you

15  did not take the position, in other words, the same offense

16  that Mr. Ahmed has just been convicted of, but you didn't take

17  the position there that that meant that he was a substantial

18  flight risk.  In fact you consented to continuing Mr. Thaler on

19  bail.

20           MS WOODS:  That's correct.

21           THE COURT:  What's the difference between Ahmed and

22  Thaler?

23           MS WOODS:  When your Honor looks at the totality of

24  the circumstances, Mr. Ahmed is differently situated.  The

25  crimes to which he has just plead guilty involve a total

Eahiahmp ag                      PLEA

maximum sentence of 35 years.  The Sentencing Guidelines range

in the plea agreement ranges from 70 to 121 months which is a

substantial sentence.

THE COURT:  About the same as the guideline range for

Mr. Thaler.  Slightly higher.

MS WOODS:  It is higher, your Honor.

THE COURT:  Slightly higher.

MS WOODS:  In addition, there is evidence, and it's

the government's view that the Court should take into account

whether or not an individual has extended family in another

country and access to funds abroad and a place where he could

go and make a save haven if he should decide to leave the

country.  We would request your Honor consider these factors in

light of the fact that the defendant was charged in this case

one day prior to him boarding a flight to London, as you will

recall.  And he has admitted that he regularly travels to both

Bangladesh and to England.

The investigation in this case reveals that the

defendant has a high level ally in London who was financing

this bribery scheme and with whom Mr. Ahmed communicated in an

effort to assist that individual in avoiding law enforcement

detection while traveling abroad and specifically in avoiding

detection because he knew that individual had an Interpol

warrant out for his arrest.  There is evidence that Mr. Ahmed

has extended family in Bangladesh as well as political allies

Eahiahmp ag                    PLEA

1  who send him money and who support him from afar.

2              THE COURT:  Are you saying that he would have a safe

3  haven in Bangladesh because he has connections there and family

4  and friends and access to funds?

5              MS WOODS:  It certainly enhances his flight risk, your

6  Honor.

7              THE COURT:  My specific question is, would Bangladesh

8  be a safe haven?

9              MS WOODS:  Not under the law, your Honor.

10             THE COURT:  How about under the facts?  As I

11  understand the facts here, he was seeking to obtain information

12  to use against the son of the prime minister of Bangladesh, the

13  prime minister being a member of a political party which was

14  adverse to the political party that Mr. Ahmed supported.  Is

15  that essentially what this case is about?

16             MS WOODS:  Yes, your Honor.

17             THE COURT:  And that party, meaning the other

18  political party, not Ahmed's, is still in power in Bangladesh?

19             MS WOODS:  They are currently in power.  And I'm no

20  expert on Bangladesh politics but from what I do understand the

21  parties are pretty evenly split in the country.

22             THE COURT:  This would be a country run by the

23  opposing political party who would now know that Mr. Ahmed has

24  been convicted of bribing an FBI agent to obtain information to

25  use against the party in power, right?  It sounds to me like

Eahiahmp ag                    PLEA

1    the opposite of a safe haven, that the last place in the world

2    he'd want to go is Bangladesh, which by the way he's not a

3    citizen of Bangladesh.  That strikes me as nonsense that that

4    would be a safe haven.  Is there any other safe haven that you

5    would want to point out?

6             MS WOODS:  No.  But he travels frequently to London,

7    and he is allied to the former prime minister's son who based

8    on the government's understanding is currently residing in

9    London.

10            THE COURT:  Is that the person who there's an Interpol

11   warrant for?

12            MS WOODS:  Yes, your Honor.

13            THE COURT:  You haven't given me any of that.  I mean

14   you said that, I appreciate what you're doing, you're making a

15   proffer.  I don't recall that being proffered the last time we

16   had a bail discussion.  But putting that aside, that was awhile

17   back, so I've forgotten a lot more than I remember, but you

18   certainly haven't given me any concrete evidence of the fact

19   (a) that there was a warrant for this person and that (b)

20   Mr. Ahmed, I think you said, took steps to help that person

21   avoid arrest.

22            MS WOODS:  Yes, your Honor.

23            THE COURT:  If that's true, I'd be curious to know

24   about it beyond just your proffer.

25            MS WOODS:  That's based on text messages that were

Eahiahmp ag                    PLEA

1   recovered from Mr. Ahmed's phone as well as Mr. Lustyik's and

2   Mr. Thaler's phones in which they communicated together because

3   Mr. Ahmed was attempting to assist the former prime minister's

4   son, who is name is Tareq Rahman, he was attempting to assist

5   him in attempting to avoid detection while traveling

6   internationally.  And Mr. Lustyik informed Mr. Ahmed indirectly

7   through Mr. Thaler via text message that there was an Interpol

8   warrant out for Mr. Rahman.

9            THE COURT:  Indirectly through whom?

10           MS WOODS:  Mr. Thaler.

11           THE COURT:  Mr. Thaler. Speak clearly, because there's

12   some confusion, obviously, in the various cases here.

13           MS WOODS:  Additionally, there are text messages --

14           THE COURT:  Let me stop you right there.  Are those

15   text messages that you've just referred to, are they referenced

16   or specifically alleged in the indictment?

17           MS WOODS:  They are not in the indictment.  No, your

18   Honor.

19           THE COURT:  I'm sorry, I didn't mean to interrupt you.

20   I did mean to interrupt you.  I want you to have an opportunity

21   to finish.

22           MS WOODS:  The indictment does refer to an objective

23   of the bribery conspiracy apart from Mr. Ahmed's attempt to

24   gather information on Sajeeb Joy, the son of the current prime

25   minister, the indictment also refers to an alternative

Eahiahmp ag                    PLEA

objective, which was to gain Mr. Lustyik's assistance in having

the charges or potential charges against his political ally,

that is Tareq Rahman, dismissed.

        THE COURT:  Mr. Lustyik is no longer an agent so

that's unlikely to happen at this point.

        MS WOODS:  That's correct, your Honor.  But it is

evidence that there is a relationship between Mr. Ahmed and

this high profile Bangladeshi politician who is now in London,

England where Mr. Ahmed travels quite frequently.

        THE COURT:  Hold on one second.  The guy in London, is

he in custody?  I mean he's the one that has the warrant.

        MS WOODS:  Not to the government's knowledge, your

Honor.

        THE COURT:  How do you know he's in London?  Wouldn't

he be in custody if there's a warrant out there for him?

        MS WOODS:  We believe he's in London because of our

review of the text messages --

        THE COURT:  Has anybody been looking for him?

        MS WOODS:  I do not know the answer to that question,

your Honor.

        THE COURT:  I'm sorry.  Continue.

        MS WOODS:  But Mr. Ahmed's connection to other

countries and individuals abroad who might be willing to help

him should he flee is contrasted with his lack of connection

here in the U.S.  He does not have any children.  And he lives

Eahiahmp ag                    PLEA

with his mother and his father.  And as your Honor will recall,

when the authorities went to Mr. Ahmed's home to arrest him,

his mother lied to the authorities for a substantial amount of

time and would not let them into the residence and denied that

he was present inside.  And furthermore, with respect to

Mr. Ahmed's father, there is evidence that his father too was

involved in this bribery scheme and was actually present at a

meeting that took place between Special Agent Lustyik,

Mr. Thaler and Mr. Ahmed himself.  Given that Mr. Ahmed's

family ties are limited here in the U.S., and given that his

employment record is spotty, although he does currently have a

job, the government is concerned that he may attempt to flee.

            THE COURT:  Okay.  Anything further?

            MS WOODS:  I would note for the Court that the

defendant lied to the agents when he was initially approached

about his involvement in this case, that he lied to the Court

in his affidavit in support of his motion to suppress, and that

as you'll recall, when his iPhone was analyzed we uncovered

documents in which he had created false FBI credentials for

himself.

            THE COURT:  That's the one where he said he was the

member of the Bureaul or something of Investigation.

            MS WOODS:  That's correct.

            THE COURT:  That's not a very good fake.  It's not a

good thing to do but no one would actually think that was real.

Eahiahmp ag                    PLEA

1   You did not think it was real.

2              MS WOODS:  No.  But it does go to his intent and his

3   willingness --

4              THE COURT:  What about his capability?  He's pleaded

5   guilty to a very serious crime.  The fact that he's a criminal

6   is already a given, you've established that.  He's pleaded

7   guilty.  He's no longer presumed innocent.  He is guilty.  I

8   guess what I'm asking about is not so much his intentions,

9   which were bad, but I'm really more interested in his

10  capability to flee or to otherwise harm another person at this

11  stage of the game.  Not two years ago or two and a half years

12  ago or even more than that, three years ago, when the offense

13  was ongoing but now, today.  I'm really focused on today, not

14  what his intentions were in September 2011.

15             MS WOODS:  In the government's view he's fully capable

16  of leaving and fleeing the jurisdiction, particularly

17  considering the substantial jail time that he's facing and due

18  to the fact that he's now pled guilty to the crimes with which

19  he's charged, and for that reason we ask the Court to detain

20  the defendant.

21             THE COURT:  And I take it that you oppose this

22  application?

23             MR. HENRY:  Yes.

24             THE COURT:  Ms Woods is absolutely correct.  3143(a)

25  says that the judicial officer shall order a person who has

Eahiahmp ag                    PLEA

1  been found guilty of an offense and is awaiting imposition or

2  execution of sentence, other than some things that aren't

3  relevant here, shall be detained, and here's the key language,

4  unless the judge find by clear and convincing evidence -- clear

5  and convincing evidence -- that the person is not likely to

6  flee or pose a danger to another individual or the community.

7  What would be the basis for me to find on this record by clear

8  and convincing  evidence that he's not likely to flee or pose a

9  danger?

10         MR. HENRY:  The report from Pretrial Services which

11 was provided to counsel for the government, myself, and I

12 presume the Court, wherein it states that Mr. Ahmed, after

13 having served approximately five months --

14         THE COURT:  Move the microphone a little closer,

15 Mr. Henry, I'm sorry.  I'm getting a little older.

16         MR. HENRY:  The report which reflects that Mr. Ahmed

17 when he was originally arrested was held in custody at Valhalla

18 for approximately five months.  At a hearing in front of this

19 Court we determined that there were conditions in which

20 Mr. Ahmed could be released.  Those conditions were eventually

21 met approximately a year ago, about ten months ago

22 approximately, and that since that time, Mr. Ahmed has modified

23 the terms of his conditions so that he has greater discretion

24 to leave and come back to his home so that he can attend work,

25 sometimes late into the evening.  He obtained employment.  He

Eahiahmp ag                    PLEA

 1   continues to have his only true family ties here in the United

 2   States based on that report.  His passport has been turned in,

 3   therefore he does not have the ability to travel by regular

 4   means to any other country.  He has been restricted from

 5   traveling from the Southern District and Eastern District of

 6   New York.

 7        And what makes all of that important is he's complied

 8   with every single one of those terms without fail which is

 9   reported by his Probation, pretrial officer, Ms Owens, and

10   reiterated by Mr. Barrios from the office here.  And the very

11   last line of their report says that the Pretrial Services

12   respectfully requests that bail be continued in this case.

13        Your Honor, I think that history is the best

14   indication that Mr. Ahmed isn't going anywhere.  The idea that

15   he pled guilty to an offense makes him more of a flight risk.

16   I think that makes him less of a flight risk.  He's here.  He's

17   accepted responsibility for his actions.  He's ready to face

18   the consequences.  He knows what they are.  And he's here with

19   his family today ready to take that on.  He's not going to go

20   anywhere.  So based on those factors we would ask that bail be

21   continued.

22        THE COURT:  All right.  I'm going to deny the

23   government's application.  I am going to continue the defendant

24   on bail.  But I do want to make a couple of comments.  First,

25   of all the application is certainly not frivolous for two

Eahiahmp ag                    PLEA

reasons.  One, the statute requires that a person who has been

convicted by guilty plea shall be detained unless certain

things can be found and placed on the record, and secondly the

charges in this case are very serious.  There's no question

that at a point in time, now a couple of years back, Mr. Ahmed

was engaged in conduct which did involve actual bribery and

planned to commit even more bribery of a significant and

important public official, a federal official, to obtain

information that he wanted to use in connection with, or he

wanted to relay to folks who could use it in connection with

political disputes in a foreign country.  All of that is a

really serious matter.

         I don't think the fact that he was born in Bangladesh

or has connections in Bangladesh is relevant at all.  I really

don't.  It's actually kind of disappointing that the government

would take that position although they often do in these kinds

of cases.  Especially for those of us who are personally

relatively close to immigrants and therefore have family in

foreign countries, it's frankly a little bit offensive to those

of us in that situation.  But it's not a frivolous request

because the statute requires it and because the charges are

serious and because what he wanted to do was, what he did do

was to commit a serious crime, crimes for which he's been

convicted and what he wanted to do was use this information in

an entirely inappropriate way.

Eahiahmp ag                    PLEA

1           But on the other hand, that all occurred most recently

2      in March of 2012.  And as I recall the facts in this case, and

3      of course there was no trial so I don't pretend to know the

4      facts as well as the parties do but as I recall the facts in

5      this case, the effort to enter into this ongoing relationship

6      with the FBI agent petered out because Ahmed said:  Well, I'll

7      give you a lot more money but you've got to give me a lot more

8      information.  And Thaler and Lustyik said, well, we'll give you

9      a lot more information but you've got to give us a lot more

10     money.  And Ahmed said give me the information and I'll give

11     you the money and Lustyik and Thaler said give us the money,

12     we'll give you the information.  And at some point they stopped

13     going back and forth on that and there was no more money and no

14     more information that was exchanged.  And that was two and a

15     half years ago.

16          He did undoubtedly make false statements to agents

17     when he was first confronted, although he also ultimately made

18     a great number of admissions which would have been used against

19     him at trial very effectively by the government.  The

20     government would have focused more on the admissions than the

21     false statements, I suppose, although they would have focused

22     on the false statements as false exculpatory, I guess.

23          But since he was released he has been fully compliant

24     with the conditions of release, he's been employed, absolutely

25     clear, and I agree with Mr. Henry that his true family ties

Eahiahmp ag                    PLEA

here are in the United States, particularly in Connecticut.  He

doesn't have a passport.  He can't get another passport.  He's

subject to electronic monitoring.  And Mr. Henry didn't mention

this but he also signed a $500,000 personal recognizance bond

and even more important than that, that bond is secured by two

things that I believe wield a great deal of moral suasion over

the defendant to remain here.  One, I believe five close family

members co-signed that bond.  Which means if Mr. Ahmed were to

flee those five people would be liable for $500,000.  Secondly,

the bond itself is secured by a hundred thousand dollars in

cash which means that hundred thousand dollars would just

disappear in a nanosecond if he were to disappear.  His

disappearance and the 100,000 disappearance would be

coextensive you might say.  And the people who put up that

money would lose that money.  While it's impossible to predict

the future, if I did have a crystal ball that would make the

job a lot easier, so all I can do is make a judgment call based

on the evidence in front of me.

        Let me digress a second.  There are certain things

referred to by the government as to which I have no evidence in

front of me, such as efforts to stop or to help his friend

evade arrest or evade detection.  I think those so-called text

messages are not even alleged in the indictment.  Again, the

government's application is not frivolous but it's just

insufficient under the circumstances where the defendant does

Eahiahmp ag                    PLEA

have extremely close family ties in this country, people to

whom he has these extremely close family ties have put up a

huge amount of money which would all be lost if he were to

flee.  The bad behavior that he engaged in while bad and while

warranting a prosecution and conviction and while giving rise

to a potentially very serious jail sentence, those things all

did occur kind of a long time ago and they petered out when

there wasn't enough money coming in one direction and there

wasn't enough information going in the other direction and the

thing just sort of stopped, it just sort of petered out,

nothing else happened after that.  The defendant wasn't

arrested as I recall until sometime in the middle of 2013 so it

was well more than a year after that.  And as far as I know,

there's no evidence that he was engaged -- for example, let's

say it had petered out in March of 2012 but then a few months

later it started up again in some form or another.  But I don't

recall there's any evidence, certainly none of that evidence is

in front of me.  It doesn't make what he did less serious but

it's relevant on the issue of bail.  Also, he can no longer get

assistance from Mr. Lustyik in any way, shape or form *vis a vis*

his friend or himself.  He doesn't have a passport.

        So I think under all these circumstances, I think

there is clear and convincing evidence that he is not a risk of

flight and that he's not a risk, he doesn't pose a risk of harm

to others or to the community.  And because I make that finding

Eahiahmp ag                    PLEA

1    I will continue him on bail.

2            And I should also say one last thing just so the

3    record is complete, I put a lot of stock in what the

4    professionals in the Pretrial Services office tell me.  This is

5    what they do every day.  This is their job to not only

6    supervise people that are out on bail, but to make thoughtful,

7    informed judgments about whether people should be allowed to be

8    on bail and under what circumstances.  So it's not just -- in a

9    way the title is sort of not really a complete, it's not a

10   completely accurate description of what they do.  Pretrial

11   Services, makes it sound like they just sort of supervise and

12   provide pretrial services.  But it's more than that, it's much

13   more than that.  It's providing thoughtful, informed judgment

14   calls about whether someone should be released or not and under

15   what circumstances and under what conditions.  And for those

16   reasons I place a lot of stock in what the professionals have

17   to say and in particular I place a lot of evidence in what

18   Mr. Barrios has to say, which by the way it's not just him who

19   says that because in this case there happened to be another

20   colleague of his in Connecticut who has been actually

21   interacting with Mr. Ahmed on a regular basis and the two of

22   them, meaning colleague in Connecticut and Mr. Barrios, in

23   their considered judgment, thoughtful considered judgment,

24   believe that under the circumstances Mr. Ahmed should be

25   continued on bail.  And I accept that judgment for all the

1    reasons I've stayed.

2              Mr. Ahmed, I could easily revoke your bail right now.

3    And if ten minutes from now or a day from now or a week from

4    now or a month from now I hear anything that changes for the

5    worse, if you will, the information that I'm aware of today I

6    will revoke your bail.  So you've asked to remain out pending

7    sentencing, I'm granting that request.  But it's a close call.

8    I found by clear and convincing evidence that you're not a risk

9    of flight or a risk of harm to the community or to other

10   people.  But if I learn something knew that I don't know now, I

11   could easily change my mind about that.  So you need to know

12   that you have to continue to comply with all of the conditions

13   of your release, strictly comply with all the conditions of

14   your release.  You need to know that if you fail to return to

15   my courtroom for sentencing on the date and time set you will

16   be guilty of a separate crime, bail-jumping, and for that you

17   could be imprisoned apart from and in addition to whatever

18   sentence you receive for the crimes to which you plead guilty.

19   Do you understand all that?

20              THE DEFENDANT:  Yes.

21              THE COURT:  You need to show up at your attorneys and

22   show up for your interview with the probation officer.  You

23   have a lot of obligations you have to honor going forward.  If

24   I hear that you're not honoring those obligations, I could

25   change my mind.  I'm sure the government would be quick to make

Eahiahmp ag                    PLEA

1    that application, as they should, that's their job.  They

2    should make that application.  So don't let me down, okay?

3              THE DEFENDANT:  Yes.

4              THE COURT:  All the conditions on which you were

5    released up until now continue to apply and if you violate

6    those conditions, the consequence will be remand.  I'm

7    confident it won't happen so I am going to continue you on

8    bail.  Anything else we need to do today?

9              MR. HENRY:  No, thank you, your Honor.

10             MS WOODS:  No, your Honor.

11             THE COURT:  Thank you all very much.  I'll see you all

12   January 23, 2015 at 2:30 p.m.

13             THE COURTROOM DEPUTY:  All rise.

14             This Court will be in recess.

15             (Proceedings adjourned)

16

17

18

19

20

21

22

23

24

25